UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | CASE NO: |
| ) | |
| v. ) | |
| ) | |
| HOUSING AUTHORITY OF THE ) | |
| CITY OF RUSTON, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

# **COMPLAINT**

The United States of America ("United States") files this Complaint, alleging as follows:

1. This action is brought by the United States to enforce the provisions of the Fair Housing Act, as amended, 42 U.S.C. § 3601 *et seq*.

2. This Court has jurisdiction over this action under 28 U.S.C. § 1345 and 42 U.S.C. § 3614(a).

3. Venue is proper in this judicial district under 28 U.S.C. § 1391(b). The events giving rise to this action occurred in this judicial district, and the property that is the subject of this action is situated in this judicial district.

4. Defendant Housing Authority of the City of Ruston, Louisiana ("RHA") is a political subdivision of the State of Louisiana and is public body, corporate and politic, created to provide decent, safe and sanitary dwellings to persons of low income in the City of Ruston ("Ruston"). La. Rev. Stat. §§ 40:384; 40:392.

### A. RHA's Public Housing Complexes Are Segregated by Race

5. From at least 2007 to the present, the RHA has engaged in a pattern or practice of race discrimination by steering applicants to housing complexes based on race and by maintaining a racially segregated public housing program.

6. Between 1956 and 1971, the RHA built five housing complexes containing 300 housing units in the City of Ruston, all of which are federally subsidized under the United States Housing Act of 1937, 42 U.S.C. § 1437 *et seq*. RHA's housing complexes are the Louise Homes, established in 1956; the Greenwood Homes, established in 1956; the Maryland Plaza Homes, established in 1965; the Truman Homes, established in 1965; and the Eastwood Homes, established in 1971. These complexes are dwellings within the meaning of the Fair Housing Act, 42 U.S.C. § 3602(b).

7. The RHA established its housing complexes as a dual system of public housing segregated by race. Two RHA housing complexes -- the Louise Homes and Maryland Plaza Homes -- were designated as reserved for "white" families and "white" seniors, respectively, and are located on the north side of Ruston. Two RHA complexes -- the Greenwood Homes and Truman Homes -- were designated as reserved for "colored" families and "colored" seniors, respectively, and are located on the southeast side of Ruston. The Eastwood Homes is located near the Greenwood and Truman Homes and did not have a racial designation when it opened in 1971.

8. From at least 2007, tenants at all five RHA housing complexes have lived in complexes that were disproportionately of one race. Analyses of annual occupancy data

maintained by the U.S. Department of Housing and Urban Development ("HUD") from 2007 through 2011 show that the Eastwood, Greenwood and Truman Homes were "racially identifiable" as black during this time period, *i.e.*, occupied by a disproportionately higher percentage of black tenants than would be expected at these complexes if housing assignments were not based on race. For example, between 2007 and 2011, approximately 96% to 100% of the tenants living at the Eastwood Homes, depending on the year, were black. By contrast, the Louise Homes and the Maryland Plaza Homes were "racially identifiable" as white, *i.e.*, occupied by a disproportionately higher percentage of white tenants than would be expected at these complexes if housing assignments were not based on race. For example, between 2007 and 2011, approximately 81% to 90% of the tenants living at the Maryland Plaza Homes, depending on the year, were white. The degree of racial imbalance at all five complexes is statistically significant and cannot be explained by non-racial factors such as bedroom size or whether a tenant is elderly or disabled.

9. From at least 2007 through at least 2011, nearly all tenants at RHA were living in racially identifiable complexes. Approximately 91% to 95% of all white tenants living at the RHA, depending on the year, lived in the Louise Homes and Maryland Plaza Homes. Similarly, approximately 87% to 89% of all black tenants living at the RHA, depending on the year, lived in the Eastwood, Greenwood, and Truman Homes.

10. RHA's complexes are located in racially concentrated areas of Ruston. Based on 2010 U.S. Census Bureau data, the Eastwood, Greenwood and Truman Homes are located in two census tracts that are 79% black and 75% black. By contrast, the Louise Homes and Maryland

Plaza Homes are located approximately one mile away, across a set of railroad tracks, and in a census tract that is 75% white.

### B. The RHA Has a Policy and Practice of Racial Steering and Deferring to Tenant Preferences

11.     The racial segregation described in paragraphs 1-10 above is a direct result of RHA's current policy and practice of steering applicants and tenants to particular complexes based on race and of RHA's failure to apply consistently its Admissions and Continued Placement Policy ("ACOP").   Among its provisions, the ACOP requires that RHA make housing assignments from a waiting list that is maintained by bedroom size in the order in which households applied and without regard to tenant preference for a particular complex or location.   Instead, between 2007 and at least 2011, staff at RHA followed a practice of deferring to the preferences of white applicants for the Louise and Maryland Plaza Homes and of black applicants for the Eastwood, Greenwood or Truman Homes.   Staff at RHA housed white applicants based on their perception that white applicants would favor units in identifiably white complexes and would reject units in identifiably black complexes.   Similarly, staff at RHA housed black applicants based on their perception that black applicants would favor, or would be less likely to reject, units in identifiably black complexes.

12.     From 2007 through the first part of 2012, more than 400 applicants moved into units at the RHA.   RHA assigned white applicants to units in the Louise and Maryland Plaza Homes and black applicants to units in the Eastwood, Greenwood and Truman Homes in percentages that were much higher than would be expected if housing assignments were not based on race.   To do so, RHA selected some white applicants ahead of comparable black applicants

who had higher positions on the waiting list so that white applicants could be housed in the Louise or Maryland Plaza Homes. Similarly, RHA selected black applicants over comparable white applicants who had higher positions on the RHA's waiting list so that black applicants would be housed in Eastwood, Greenwood or the Truman Homes. In some cases, black applicants who were offered units in the Eastwood or Greenwood Homes, but who should have been offered units in the Louise Homes, rejected the units because of the location and consequently, had to look elsewhere for housing.

13. RHA's conduct has reinforced or perpetuated a racially segregated public housing system and has exacerbated racial segregation in the census blocks in which public housing is located in the City of Ruston. The dissimilarity index, a common measure of residential racial segregation used by the United States Census Bureau, is approximately .81 in the census blocks where RHA's five housing complexes are located. This means that 81% of residents would have to move census blocks in order for the population in those areas to be distributed evenly by race. If RHA made housing assignments at its complexes in a race-neutral manner, rather than based on race, the dissimilarity index for the census blocks would be substantially lower, at .50, which means that fewer than 50% of residents would have to move in order for the population in those census blocks to be distributed evenly by race.

14. RHA's discriminatory policies and practices have harmed dozens of applicants and tenants at RHA who were offered and assigned to units in segregated housing or were delayed housing because RHA skipped them on the waiting list.

15. The conduct of the defendant as described above constitutes: (a) a refusal to rent,

a refusal to negotiate for the rental of, and conduct otherwise making unavailable or denying dwellings to persons because of race or color in violation of 42 U.S.C. § 3604(a); and (b) discrimination in the terms, conditions, or privileges, of rental of dwellings on the basis of race or color in violation of 42 U.S.C. § 3604(b).

16. The conduct of the defendant constitutes:

    (a) A pattern or practice of resistance to the full enjoyment of rights secured by the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*; and

    (b) A denial to a group of persons of rights granted by the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, which denial raises an issue of general public importance.

17. Individuals who were subjected to defendant's discriminatory housing practices are aggrieved persons as defined by the Fair Housing Act, 42 U.S.C. § 3602(i), and have suffered actual injury and damages as a result of defendant's conduct as described herein.

WHEREFORE, the United States prays that the Court enter an order that:

A. Declares that the defendant's policies and practices, as alleged herein, violate the Fair Housing Act, as amended, 42 U.S.C. § 3601 *et seq.*;

B. Enjoins defendant, its agents, employees and successors, and all other persons in active concert or participation with it, from:

    (1) Discriminating on account of race or color against any person in any aspect of the rental of a dwelling; and

    (2) Discriminating in the terms, conditions, or privileges, of rental of

dwellings on the basis of race or color.

C. Requires defendant to take all necessary and appropriate affirmative steps to correct the continuing effects of its past and present discriminatory practices.

D. Requires such action by the defendant as may be necessary to restore all persons aggrieved by its discriminatory housing practices to the position they would have occupied but for such discriminatory conduct.

E. Awards monetary damages to each person aggrieved by defendant's discriminatory housing practices, pursuant to 42 U.S.C. § 3614(d)(1)(B).

The United States further prays for such additional relief as the interests of justice may require.

Dated: September 30, 2013

ERIC H. HOLDER JR.
Attorney General

/s/ Jocelyn Samuels
JOCELYN SAMUELS
Acting Assistant Attorney General
Civil Rights Division

/s/ Steven H. Rosenbaum
STEVEN H. ROSENBAUM
Chief
Housing and Civil Enforcement Section
Civil Rights Division

| | |
|---|---|
| STEPHANIE A. FINLEY<br>United States Attorney<br>Western District of Louisiana<br><br>/s/ *John A. Broadwell*<br>JOHN A. BROADWELL (1733)<br>Assistant United States Attorney<br>Western District of Louisiana<br>300 Fannin Street, Ste. 3201<br>Shreveport, LA 71101<br>Phone: (337) 262-6618<br>John.Broadwell@usdoj.gov | /s/ *Burtis M. Dougherty*<br>Deputy Chief<br>BURTIS M. DOUGHERTY<br>Trial Attorney<br>DC Bar #225003<br>Housing and Civil Enforcement Section<br>Civil Rights Division<br>United States Department of Justice<br>950 Pennsylvania Ave., N.W. - G St. , NW Bldg.<br>Washington, D.C. 20530<br>Phone:   (202) 514-4737<br>Fax:   (202) 514-1116<br>Burtis.M.Dougherty@usdoj.gov |