# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CIVIL ACTION NO. 13-2778** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **HOUSING AUTHORITY OF THE CITY OF RUSTON,** | **MAG. JUDGE KAREN L. HAYES** |

## <u>CONSENT ORDER</u>

### I. INTRODUCTION

1.      The United States initiated this action to enforce the Fair Housing Act, as amended, 42 U.S.C. § 3601, et seq. ("FHA").  The United States' complaint alleges that the Defendant, Housing Authority of the City of Ruston ("RHA"): (1) refused to rent, refused to negotiate for the rental of, or otherwise made unavailable or denied dwellings to persons because of race or color in violation of 42 U.S.C. § 3604 (a); (2) discriminated in the terms, conditions, or privileges, of rental dwellings on the basis of race or color in violation of 42 U.S.C. § 3604(b); and (3) engaged in a pattern or practice of resistance to the full enjoyment of rights secured by the Fair Housing Act and a denial to a group of persons of rights granted by the Fair Housing Act, which denial raises an issue of general public importance, in violation of 42 U.S.C. § 3614(a).

2.      Specifically, the United States alleges that the Defendant violated these provisions of the FHA by, among other ways: (1) steering applicants and residents based on race or color to public housing complexes that RHA had located in racially segregated areas; (2)

assigning black applicants to housing complexes that are disproportionately black and located in majority black areas in a manner that departs substantially from a neutral, non-discriminatory norm; (3) assigning white applicants to housing complexes that are disproportionately white and located in majority white areas in a manner that departs substantially from a neutral, non-discriminatory norm; (4) selecting white applicants over eligible black applicants who had higher positions on RHA's waiting list so that white applicants would be housed in vacant units in disproportionately white complexes; (5) selecting black applicants over eligible white applicants who had higher positions on the RHA's waiting list so that white applicants would not be housed in vacant units in disproportionately black complexes; and (6) failing and refusing to take appropriate actions to overcome the effects of the RHA's past racially discriminatory housing practices. The RHA filed an Answer contesting these allegations.

3.     The United States and the RHA wish to avoid costly and protracted litigation and agree that the United States' claims should be settled without further litigation or an evidentiary hearing. Therefore, the United States and the RHA have agreed to the entry of this Consent Order.

4.     The RHA acknowledges that, if this case went to trial,  the United States would introduce, *inter alia,* the following evidence: (a) sworn deposition testimony from the RHA project manager from 2003 to 2013 that during her tenure she selected later-applying white applicants for residency in the Louise Drive Homes over earlier-applying African-American applicants in order to maintain an approximate 50%/50% black/white tenant ratio there (b) documents that show that from at least 2007 to 2013 the RHA selected later-applying white applicants for residency in the disproportionately white Maryland Plaza Homes over earlier-applying African-American applicants; (c) sworn deposition testimony from the same RHA

project manager that on multiple occasions she did not offer white applicants available apartments at at least one of the RHA's three nearly all-black housing projects (Eastwood, Greenwood, and Truman Homes) because of their race and instead offered those units to later-applying African-American applicants; and (d) expert testimony that statistical analyses of the racial distribution of RHA tenants among its five public housing developments between 2003 and 2015 show that the racial occupancy patterns are extremely unlikely to have occurred without race being a factor in tenant assignments. The RHA further acknowledges that if the United States' evidence were credited and RHA's defenses rejected at trial, the evidence would support a finding that the RHA had violated the Fair Housing Act.

Therefore, **IT IS HEREBY ORDERED THAT** the Joint Motion for Entry of Consent Order [Doc. No. 46] Is **GRANTED.**

**IT IS FURTHER ORDERED THAT**:

## II. GENERAL INJUNCTION

5.      The Defendant, its employees, agents, and all those acting in concert or participation with them, are hereby enjoined from:

a.      Refusing to rent a dwelling, refusing or failing to provide or offer information about a dwelling, or otherwise making unavailable or denying a dwelling to a person because of (i) that person's race or color, (ii) the race or color of any person residing in or intending to reside in a dwelling, (iii) the race or color of any person associated with such person, or (iv) the race or color of persons residing in the neighborhood of a dwelling;

b.      Discriminating against any person in the terms, conditions, or privileges of the rental of a dwelling or in the provision of services or facilities in

connection therewith, on the basis of race or color;

c.     Restricting or attempting to restrict the choices of a person by word or conduct in connection with seeking or renting a dwelling so as to perpetuate, or tend to perpetuate, segregated housing patterns, or discouraging or obstructing choices in a community, neighborhood or development on the basis of race or color;

d.     Discouraging any person from inspecting or renting a dwelling because of race or color or because of the race or color of persons in a community, neighborhood or development;

e.     Discouraging the rental of a dwelling because of race or color by exaggerating drawbacks or failing to inform any person of desirable features of a dwelling or of a community, neighborhood, or development;

f.     Communicating to any prospective renter that he or she would not be comfortable or compatible with existing residents of a community, neighborhood or development because of race or color;

g.     Assigning any person to a dwelling at a particular development or building because of the person's preference based on race or color; and

h.     Assigning any person to a particular section of a community, neighborhood or development, or to a particular building, because of race or color.

### III. NONDISCRIMINATION POLICY

6.     The Defendant's responsibilities under this Consent Order shall apply to each and every residential rental property in which the RHA has or obtains an ownership, management, or

other financial interest during the term of this Order. A list of residential properties currently owned and/or managed by the RHA (hereafter "the Subject Properties") is attached at Appendix A. Defendant's signature to this Consent Order serves as certification of the completeness and accuracy of this list.

7.     Immediately upon entry of this Consent Order, the RHA shall implement a Nondiscrimination Policy regarding the rental of dwelling units at the Subject Properties that shall be applied equally to all actual and prospective tenants, regardless of their race or color. The text of the Nondiscrimination Policy shall be in the form of Appendix B, and shall be added to the RHA's Assignment and Continued Occupancy Policy ("ACOP").

8.     Within five (5) days after entry of this Consent Order, the RHA shall: (a) provide a copy of this Consent Order and the Nondiscrimination Policy to all of its employees, agents, or anyone acting under their direction, who have responsibility for showing, renting, or managing dwelling units at the Subject Properties; and (b) conduct a question and answer session for all such employees and agents regarding the contents of the Consent Order and Nondiscrimination Policy with trial counsel for the RHA. The RHA shall secure a signed statement from each agent or employee acknowledging that he or she has received and read the Consent Order and the Nondiscrimination Policy, has had the opportunity to have questions about the Consent Order and Nondiscrimination Policy answered, and agrees to abide by the relevant provisions of the Consent Order and Nondiscrimination Policy. This statement shall be in the form of Appendix C.

9.     The RHA shall provide a copy of this Consent Order and the Nondiscrimination Policy to each new agent or employee who has responsibility for showing, renting, or managing dwelling units at the Subject Properties within five (5) business days after the agent or employee

is hired, and shall provide him or her the opportunity to have questions about those documents answered.  The RHA shall also secure a signed statement from each such new agent or employee that this has been done, in the form of Appendix C.

10.     Within thirty (30) days after the date of entry of this Consent Order, the RHA shall take the following steps to notify the public of its Nondiscrimination Policy:

a.     Prominently post  in a location easily visible to both applicants for and tenants of public housing at the RHA central leasing office, and at any other location it may subsequently use for the rental of dwellings, a fair housing poster no smaller than ten (10) by fourteen (14) inches that states that all housing units are available for rent on a nondiscriminatory basis. A poster that comports with 24 C.F.R. Part 110 will satisfy this requirement.

b.     Include the words "Equal Housing Opportunity" and/or the fair housing logo in all housing-related advertising conducted by the RHA, its agents, or employees, including both print and other visual or electronic media, and in all pamphlets, brochures, and other informational material it makes available to the public.  This requirement does not compel the RHA to advertise in any media, but does require compliance with this provision whenever the RHA so advertises.

c.     Include the following phrase in the standard rental application and the standard rental agreement used for rental of dwelling units, using letters of equal or greater size to those of the text in the body of the document:

6

We are an equal housing opportunity provider.
We do not discriminate on the basis of race, color,
sex, national origin, religion, disability, or familial
status (having children under age 18).

## IV. NONDISCRIMINATORY PROCEDURES FOR APPLICATIONS, ASSIGNMENTS, AND TRANSFERS

11.     The parties acknowledge that the RHA has adopted a written Admissions and

Continued Occupancy Policy ("ACOP") that, *inter alia*, sets forth procedures to be followed

with respect to the selection of applicants from the waiting list and their placement in RHA

apartments.   The RHA further acknowledges that it is legally obligated to comply with HUD's

regulations relating to the operation of federally-funded public housing authorities.   The RHA

shall also comply with the specific procedures in Paragraphs 12-19 below with respect to the

rental of dwellings at RHA housing complexes to ensure compliance with the Fair Housing Act

and relevant HUD regulations and to ensure that these dwellings are made available for rent on

an equal basis and on the same terms and conditions for all persons, irrespective of race or color.

The RHA shall revise its ACOP as necessary to reflect and incorporate these procedures.

12.     Within thirty (30) days after the date of entry of this Consent Order, the RHA

shall develop written uniform nondiscriminatory procedures for: (1) receiving, handling,

processing, rejecting, and approving rental inquiries and applications made in-person, by

telephone, or by other means; (2) creating, maintaining, and updating waiting lists; (3) assigning

prospective tenants to new units; (4) transferring existing tenants to different units; and (5)

providing services to tenants (collectively, "Nondiscriminatory Procedures").   The

Nondiscriminatory Procedures shall be consistent with relevant HUD regulations and shall be

submitted to the United States for approval in advance of their implementation as set forth in

Paragraph 13 _infra_ and shall be consistent with the provisions of this Section.

13.    The United States shall review the RHA's proposed Nondiscriminatory Procedures and will provide a written response to the RHA within thirty (30) days, and will not unreasonably withhold its approval.  If the United States indicates in writing that it does not approve the Nondiscriminatory Procedures, or specific provisions thereof, the implementation of the provisions to which the United States objects shall be delayed, and the RHA and the United States shall seek to resolve their differences.  In the event that the parties cannot agree, then either party may, within fourteen (14) days thereafter, bring the dispute to the Court for resolution.  The RHA shall implement the Nondiscriminatory Procedures immediately upon receipt of a no objection notice from the United States or upon judicial resolution.

14.    For the duration of this Consent Order, the Nondiscriminatory Procedures may be modified only upon prior approval of the United States.  At least thirty (30) days prior to any scheduled modification, the RHA shall submit the proposed modification to the United States for review and approval.  The United States will respond within thirty (30) days and will not unreasonably withhold its approval.  If the United States indicates in writing that it does not approve the modification, the implementation of the provisions to which the United States objects shall be delayed, and the RHA and the United States shall seek to resolve their differences.  In the event that the parties cannot agree, then either party may, within fourteen (14) days thereafter, bring the dispute to the Court for resolution.  The RHA may implement the proposed modifications to the Nondiscriminatory Procedures immediately upon receipt of a no objection notice from the United States or upon judicial resolution.

15.    Within ten (10) days of their implementation, the RHA shall post and prominently display the Nondiscriminatory Procedures in any office where there is rental-related activity and/

or personal contact with applicants, and the RHA shall offer a copy of the Nondiscriminatory Procedures to all applicants for the rental of a dwelling.

16.     No less than five (5) days before implementation of the Nondiscriminatory Procedures, the RHA shall: (a) provide a copy of them to all of its employees, agents, or anyone acting under their direction, who have responsibility for showing, renting, or managing dwelling units at the Subject Properties; and (b) conduct a question and answer session for all such employees and agents regarding the contents of the Nondiscriminatory Procedures.  The RHA shall secure a signed statement from each agent or employee acknowledging that he or she has received the Nondiscriminatory Procedures, has had the opportunity to have questions about them answered, and agrees to abide by the Nondiscriminatory Procedures.  This statement shall be in the form of Appendix D.

17.     The RHA shall provide a copy of the Nondiscriminatory Procedures to each new agent or employee who has responsibility for showing, renting, or managing dwelling units at the Subject Properties within five (5) days after the agent or employee is hired and shall provide that individual with the opportunity to have his or her questions about them answered.  The RHA shall also secure a signed statement from each such new agent or employee in the form of Appendix D.

18.     At a minimum, the Nondiscriminatory Procedures shall include the following provisions, which are intended to ensure nondiscrimination in the creation and maintenance of the RHA's waiting list and the selection and assignment of tenants to available apartments and to ensure the creation of a proper record that can be monitored for compliance in the future:

    a.     Availability List: the RHA shall develop and update promptly whenever there is a change in relevant information an Availability List that includes

9

the addresses and unit numbers of all dwelling units known to be available

or reasonably expected to be available for rental within fifteen (15) days,

which includes for each dwelling:

1.    the complex name, and the street address, apartment number, and number of bedrooms;

2.    whether the dwelling is vacant and, if not, the date that the dwelling is expected to be vacant;

3.    whether the dwelling is available to be moved into and, if not, the date that it is expected to be available for move-in and the date it is actually available to be moved into; and

4.    the date of the list.

The RHA shall post the Availability List in a prominent location visible to

the public at the RHA rental office for the duration of this Order. If at any

time during the duration of this Consent Order the RHA develops a

website, the Availability List shall also be posted daily on that website.

The RHA shall maintain an electronic version of its Availability List in its

files on no less than a weekly basis for the duration of this Order.

b.    Preference Form.  The RHA shall create a Preference Form and shall

provide one to each applicant during the application process.  The

Preference Form shall fully explain each of the housing preferences that

are available under the RHA's ACOP, and provide a space where the

applicant can indicate which preference(s) the applicant believes he or she

is entitled to, and the supporting reason(s).  In addition, the RHA shall

require all applicants to sign the Preference Form stating that they

understand the various preferences available and have had an opportunity

to indicate each one to which they believe they are entitled. The RHA shall record on the Preference Form each preference that was granted or denied, the date of that decision, the reason(s) for the decision, and the name of the RHA employee who assisted the applicant. Also, the RHA shall record on the Preference Form which document(s) (or lack thereof) justify the decision to grant (or deny) each preference, and attach such supporting documents. If written records are not available to justify a particular preference, the applicant shall not be eligible for that preference. The Preference Form shall be updated for each applicant when that applicant becomes eligible for consideration for an apartment of the appropriate size for which the applicant is eligible.

c.  <u>Waiting Lists</u>. The RHA shall develop and maintain separate waiting lists for each bedroom size unit it has in its inventory. For each applicant, the list shall contain each applicant's name, race, and/or ethnicity; current address; one or more current telephone numbers; the number of household members; and any applicable preference(s). The waiting list shall also record, for each applicant, the time and date he or she was placed on the list and the name of the RHA employee who received the applicant's application. If the RHA chooses not to maintain a separate waiting list for studio apartments, the waiting list shall reflect whether a single-person household is or is not willing to accept such a unit. The rank of each applicant on the waiting list shall be determined in accordance with the RHA's most recent ACOP, applicable HUD regulations, and the

requirements set forth in this Section.  The RHA shall produce an updated waiting list after each housing placement.  The RHA shall maintain complete, accurate, and up-to-date records to support each applicant's rank on the waiting list, the type of dwelling for which each applicant is eligible, and the preference RHA gives to each applicant, if any.  The RHA shall record all unsuccessful attempts to contact a person on the waiting list, all offers of available units that it makes to persons on the waiting lists, and all placements accepted by persons on the waiting list as set forth in paragraph 18(f) ("Placement Log") <u>infra</u>.  The RHA shall retain an electronic version of its waiting lists on no less than a weekly basis for the duration of this Order.

d.    <u>Transfer List</u>.  The RHA shall develop and maintain a list of residents seeking to transfer to another apartment at the RHA ("Transfer List").  The Transfer List shall contain the resident's name and race, current address, one or more telephone numbers, the number of household members, the size of unit for which the resident is eligible, the date of the transfer request, the reason for the transfer request, and the name of the RHA employee who received the resident's request for a transfer. The rank of each applicant on the transfer list shall be determined in accordance with the RHA's most recent ACOP and in accordance with Section IX, para. 30, <u>infra</u>.  The RHA shall maintain complete, accurate, and up-to-date records to support each applicant's rank on the transfer the list, the type of dwelling for which each applicant is eligible, and the preference RHA gives to each

applicant, if any.  The RHA shall record all offers of available units that it makes to persons on the transfer lists and all placements accepted or rejected by persons on the transfer list as set forth in paragraph 18 (f) ("Placement Log") <u>infra</u>.

e.    <u>Contact Procedures</u>.  The RHA shall develop adopt and implement a written procedure for contacting applicants regarding vacant units.  The policy shall specify, with regard to contacting applicants to offer them a unit: (1) how many times and over what time period the RHA must attempt to reach an applicant; (2) what means the RHA must use to attempt to reach an applicant *(e.g*., phone, emergency contact's phone, email, letter); (3) how long the RHA must wait to hear from an applicant before reaching out to the next applicant on the Waiting List.  All contact or attempted contact with applicants regarding vacant units shall comply with these procedures and shall be documented in the Placement Log, <u>infra</u>.

f.    <u>Placement Log</u>.  The RHA shall develop and maintain a document that lists RHA's offers of housing and housing placements.  The Placement Log shall include, for each vacant unit: the name, current address, and one or more telephone numbers of each applicant considered for placement in that unit; each applicant's rank on the waiting list for an apartment of that size and type; the time(s) and/or date(s) on which the RHA attempted to contact each applicant; the name of the RHA employee who attempted to make such contact; the manner of the attempted contact (telephone, mail, e-mail, etc.); the result of each attempted contact; whether the applicant was

offered the unit, and the date and time of such offer; and the applicant's response to the offer.  If the highest-ranking applicant currently on the Waiting List or Transfer List for that type and size unit is not offered the available unit, the RHA shall fully explain why on the Placement Log, attaching any supporting documentation.  If the RHA offers an applicant more than one unit, the Placement Log shall provide the reason RHA offered the applicant more than one unit, attaching supporting documentation.

If the RHA so chooses and HUD regulations permit, it may include in its ACOP a list of specific reasons that permit an applicant to reject an apartment without losing his or her place on the waiting list.  If an applicant rejects a unit, the Placement Log shall record the reason for the rejection.   If the applicant rejects an offered unit for a reason other than one that permits him or her to do without losing their position on the waiting list pursuant to the then-current ACOP, the Placement Log shall also record the applicant's new position on the waiting list.

g.    Occupancy List.  The RHA shall develop and maintain a tenant occupancy list that is updated monthly that lists the tenants, by head of household, residing at each of the separate RHA complexes.  The occupancy list for each complex shall indicate for each unit the resident's name, address, one or more current telephone number, move-in date, number of bedrooms, number of persons in the household, the race of the head of household, and whether the tenant received a preference as elderly, disabled, or something

14

else.

h.   <u>Rental Applications</u>.  The RHA shall permit all persons who inquire about renting a dwelling unit the opportunity to complete a written rental application.  The RHA shall write legibly on each rental application filled out by a prospective tenant the month, day, year, and time that the RHA received the application, and shall also record that information electronically.  The RHA shall process the applications in the order in which they are received.  The RHA currently considers an application to be complete – and therefore the first date on which an applicant is eligible for placement in an available unit -- when its request for a criminal background check is returned to it by the appropriate law enforcement agency.  As long as that remains its policy, the RHA shall record the date it receives each criminal background check report.  Within three (3) business days of the decision to reject an applicant, the RHA shall send a written explanation to the applicant stating the reason(s) for the RHA's decision, including any supporting documentation, and the name of the RHA employee who made the decision.  The RHA shall retain all rental applications and copies of correspondence in its files for the term of this Order.

i.   <u>Information to Prospective Applicants</u>.  The RHA shall inform all persons who inquire about renting any dwelling that they may fill out an application and, if they qualify, will be put on a waiting list; that they will be offered the first available unit of the size they need when they become

the highest-ranking applicant on the waiting list, and the consequences of rejecting an offer of housing; and that they will be treated equally, irrespective of race or color.  Any applicant or prospective applicant who requests a copy of the Availability List, _supra_ , shall be provided one free of charge.

19.     Within ninety (90) days of the entry of this Order, the RHA shall develop and implement, subject to approval by the United States, a Fair Housing Policy that sets out the specific steps the RHA will take to reduce the disparate racial residency patterns at its five current housing complexes and at any future complexes its acquires or develops during the term of this Order. The Policy may include: (a) permitting residents to transfer voluntarily to other complexes to reduce racial concentration at its housing complexes and providing appropriate financial and other assistance to them to do so; and (b) such other actions as the RHA determines to be appropriate to accomplish this purpose consistent with applicable law and HUD regulations.

## V.  TRAINING

20.     Within sixty (60) days after the date of entry of this Order, and annually thereafter, all agents or employees of the RHA whose duties include interacting with applicants or prospective applicants for housing or the showing, renting, or managing of any dwelling units at any of the Subject Properties shall undergo in-person training on the Fair Housing Act, with specific emphasis on discrimination on the basis of race or color.  All training required by this section shall be conducted by an independent, qualified third party, approved in advance by the United States, and any expenses associated with this training shall be borne by the RHA.

21.     At a minimum, the training required in the preceding paragraph shall consist of

the following:

a.  informing each attendee of his or her duties and obligations under this Consent Order, the Fair Housing Act, HUD's fair housing-related regulations, and HUD's public housing waiting list and tenant selection/assignment-related regulations;

b.  ensuring that each attendee receives or has received a copy of this Consent Order, the Nondiscrimination Policy, and the RHA's written Nondiscriminatory Procedures (as defined in Section IV);

c.  explaining that the RHA's Nondiscriminatory Procedures are designed to ensure that unlawful considerations of race or color do not influence the process of providing rental information to persons who make inquiries, the process of making decisions on rental applications, the process of assigning applicants or granting transfers to apartments, and the provision of services related to rental of housing;

d.  a question and answer session for the purpose of reviewing the foregoing areas; and

e.  securing a signed certification in the form of Appendix E from each attendee indicating that he or she has received, read, and understood this Consent Order and the RHA's Nondiscriminatory Procedures.

22.  Each new agent or employee who has responsibility for interacting with applicants or prospective applicants for housing or for showing, renting, or managing dwelling units at the Subject Properties shall undergo the training required by Paragraphs 19 and 20 above within thirty (30) days after the agent or employee is hired.

## VI. LOCATION OF NEW PUBLIC HOUSING UNITS

23.     For the duration of this Consent Order, if the RHA undertakes to develop or acquire either additional public housing units or land to be used for such purpose, it shall ensure that such additional units are located in areas that do not further racial segregation at the RHA developments and within the City of Ruston, and it shall notify the United States at least sixty (60) days before entering into any contracts or obligations to acquire such property or dwellings.

## VII. NOTIFICATION TO TENANTS

24.     Within thirty (30) days of entry of this Order, the RHA shall distribute to all tenants a summary of this Order set forth at Appendix F.  The RHA shall make available a copy of the Consent Order to any tenant or prospective tenant upon request.

25.     Within thirty (30) days of its approval and implementation, the RHA shall distribute to all tenants the Nondiscriminatory Procedures adopted pursuant to Section IV, supra. The RHA shall also provide a copy of such procedures to each prospective applicant at the time they complete an application with the RHA.

## VIII. COMPLIANCE TESTING

26.     The United States may take steps to monitor the RHA's compliance with this Consent Order including, but not limited to, conducting fair housing tests at any office(s) in which the RHA, now or in the future, conducts rental activities.

## IX. IDENTIFICATION OF AND RELIEF FOR AGGRIEVED PERSONS

27.     Within thirty (30) days of entry of this Order, the Defendant shall pay a total of one hundred and seventy-five thousand dollars ($175,000.00) in monetary damages to identified aggrieved persons in the amounts listed in Appendix H.   No aggrieved person shall be paid until he/she has executed and delivered to counsel for the United States the release at Appendix G.

18

28.     Within thirty (30) days of entry of this Order, any aggrieved person identified in Appendix I who continues to live in the Eastwood, Greenwood, or Truman Homes shall be informed by the RHA, in writing, of his or her opportunity to request a transfer to an available apartment for which the household is eligible at either the Louise Drive or the Maryland Plaza Homes.  Those persons shall be informed that they have forty-five (45) days from the date of the notice to notify the RHA that they want to request a transfer pursuant to this Paragraph.

29.     Within thirty (30) days of entry of this Order, any aggrieved person identified in Appendix I who does not live in an RHA development as of that date shall be informed by the RHA in writing of his or her opportunity to apply for housing with the RHA.  Those persons shall be informed that upon completion of the application process, a determination of eligibility, and the availability of an appropriate apartment, they will be offered an apartment at either the Louise Drive or the Maryland Plaza Homes.  This notice shall also inform them that they have sixty (60) days from the date of the notice to notify the RHA that they want to apply to the RHA for housing pursuant to this Paragraph.

30.     Upon receipt of each aggrieved person's statement of interest in requesting a transfer or of applying to the RHA pursuant to Paragraphs 28 or 29, the RHA shall follow its standard procedures, as set out in its ACOP and herein, with respect to having households complete their applications and determining their eligibility for housing with the RHA.  Aggrieved persons who have exercised the remedial transfer or application opportunity provided herein shall be offered the first available unit of the size they qualify for at the specified RHA projects, subject only to a priority for the housing of displaced families as defined in Section 8.2 of its ACOP.

31.     The RHA provides a playground for families living at the Louise Drive Homes.

There is currently no playground at Greenwood Homes, although the RHA previously had a playground there. Within one year of entry of this Order, the RHA shall complete a playground for the residents at Greenwood Homes. The RHA has represented to the United States that the City of Ruston is currently constructing an outdoor playground at the corner of Lewis Street and Cornell Avenue, immediately across the street from the Greenwood Homes. The timely construction, maintenance, and continued operation of this playground facility and its equipment shall satisfy the RHA's obligations under this paragraph.

## X. RECORD KEEPING AND REPORTING REQUIREMENTS

32.     Within ninety (90) days after the date of entry of this Consent Order, one year after the date of entry, and every twelve (12) months thereafter for the duration of this Order, the RHA shall deliver to counsel for the United States a report containing information about the RHA's compliance efforts during the preceding reporting period, including but not limited to:

a.     photographs of each office in which rental activity is conducted, showing the fair housing poster, Nondiscrimination Policy, and Nondiscriminatory Procedures pursuant to Sections III and IV, supra;

b.     copies of the standard form rental application and rental agreement, pursuant to Section III, supra;

c.     copies of all Employee Acknowledgment forms, pursuant to Sections III and IV, supra;

d.     copies of all fair housing training certifications, pursuant to Section V, supra;

e.     copies of all documents referenced in Section IV generated in the current reporting period, including Visitors Logs, Availability Lists, Waiting

20

Lists, Transfer Lists, Preference Indicators, Placement Logs, Occupancy Lists, and Rental Applications;

f. copies of current tenant rules and regulations, including any updates to the ACOP;

g. written verification that the notices to tenants have been distributed as required by Section VII, supra; and

h. written verification of the completion and continued operation of the playground facility described in Paragraph 31, together with a then-current photograph of it.

33. For the duration of this Consent Order, the RHA shall preserve all records that are the source of, contain, or relate to any of the information pertinent to the obligations under this Order, including, but not limited to, all documents listed in Sections III and IV, as well as records relating to the acquisition of interest in Subject Properties as set out in Section XI below. Upon reasonable notice, the RHA shall permit the United States to inspect and copy all such documents, or upon request by the United States, the RHA shall provide copies of such documents.

34. For the duration of this Consent Order, the RHA shall notify counsel for the United States in writing within fifteen (15) days of receipt of any complaint, whether written, oral, or in any other form, against the RHA, or against any of its employees or agents, regarding discrimination based on race or color in housing. If the complaint is written, the RHA shall provide a copy of it with the notification. The notification shall include the full details of the complaint, including the complainant's name, address, and telephone number. The RHA shall also promptly provide the United States all information it may request concerning any such

complaint and shall inform the United States within fifteen (15) days of any resolution of such complaint.

## XI. ACQUISITION OF RESIDENTIAL RENTAL PROPERTY

35.    If, at any time during the term of this Consent Order, the RHA acquires a direct or indirect ownership, management, or other financial interest in any other residential rental property, said property shall become a Subject Property, subject to all relevant provisions of this Order.  The RHA shall notify counsel for the United States within thirty (30) days of acquiring said interest.  The notice shall include identification of the nature of the RHA's interest in the property; the property address; the number of individual dwelling units; the number of bedrooms in each unit; and the name and race of all existing tenants.  The RHA shall also provide counsel for the United States a copy of the documents memorializing the transfer in interest and a copy of the lease for any existing tenant(s).

## XII. SCOPE AND DURATION OF CONSENT ORDER

36.    The provisions of this Consent Order shall apply to the RHA, its officers, agents, employees, successors and assigns, and all persons acting in active concert or participation with any of them.  This Consent Order shall remain in effect for five (5) years and two (2) months after the date of its entry.

37.    By consenting to entry of this Order, the United States and the RHA agree that in the event the RHA engages in any future violation(s) of the Fair Housing Act, such violation(s) shall constitute a "subsequent violation" pursuant to 42 U.S.C. § 3614(d)(1)(C)(ii).

38.    The Court shall retain jurisdiction for the duration of this Consent Order to enforce the terms thereof, after which time the United States' complaint shall be dismissed with prejudice.  The United States may move the Court to extend the duration of the Consent Order in

the event of non-compliance with its terms or as the interests of justice may otherwise require.

## XIII. REMEDIES FOR NON-COMPLIANCE

39.     The parties shall endeavor in good faith to resolve informally any differences regarding interpretation of and compliance with this Order prior to bringing such matters to the Court for resolution.  However, in the event the United States contends that there has been a failure by the RHA, whether willful or otherwise, to perform in a timely manner any act required by this Order or otherwise to act in conformance with any provision thereof, the United States may move this Court to impose any remedy authorized by law or equity, including, but not limited to, an order requiring performance of such act or deeming such act to have been performed, and an award of damages, costs, and reasonable attorneys' fees which may have been occasioned by the violation or failure to perform.

## XIV. TIME FOR PERFORMANCE

40.     Any time limits for performance imposed by this Consent Order may be extended by written agreement of the parties.  Other provisions in the Order may be modified only upon approval of the Court, upon motion by either party or jointly.

## XV. MISCELLANEOUS

41.     The parties agree, as of the date of the entry of this Consent Order, that litigation is not "reasonably foreseeable" concerning the subject matter of the United States' complaint. To the extent either party previously implemented a litigation hold to preserve documents, electronically stored information (ESI), or things related to the matters described above, the party is no longer required to maintain such litigation hold.  Nothing in this paragraph relieves either party of any other obligations imposed by this Consent Order.

42.     Each party to this action will bear its own costs and attorneys' fees associated

with the action.

       MONROE, LOUISIANA, this 12th day of May, 2015.

**ROBERT G. JAMES**
**UNITED STATES DISTRICT JUDGE**

**Appendix A**

**LIST AND APPROXIMATE SIZE OF RESIDENTIAL PROPERTIES
SUBJECT TO THIS CONSENT ORDER**


Louise Drive Homes (30 units)

Greenwood Homes (70 units)

Truman Homes (20 units)

Maryland Plaza Homes (72 units)

Eastwood Homes (108 units)

**Appendix B**

**NONDISCRIMINATION POLICY**

It is the policy of the Housing Authority for the City of Ruston, Louisiana ("RHA") to comply with Title VIII of the Civil Rights Act of 1968, as amended, (commonly known as the Fair Housing Act) by ensuring that apartments are available to all persons without regard to race, color, religion, national origin, disability, familial status, or sex.  This policy means that, among other things, the RHA and all its agents and employees with the responsibility for renting, managing or administering any dwelling units must not discriminate in any aspect of the rental of dwellings against qualified applicants or tenants because of race or color.  Such agents and employees may not:

A.    Refuse to rent, or negotiate for the rental of, or otherwise make unavailable or deny, a dwelling to any person because of race or color;

B.    Discriminate against any person in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race or color;

C.    Make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the rental of a dwelling that indicates any preference, limitation, or discrimination based on race or color;

D.    Assign a qualified household to a dwelling at a specific property or a particular building because of the prospective occupant's preference based on race or color;

E.    Restrict or attempt to restrict a qualified household's housing opportunity by failing to inform it of a housing availability because of the race or color of either the household or the racial characteristics of the development, or by in any way discouraging or obstructing a household's housing choice opportunity because of race or color; or

F.    Represent to persons because of race or color that any dwelling is not available for inspection or rental when such dwelling is in fact so available, either by denying its availability or by failing to inform persons of its availability.

Any RHA agent or employee who fails to comply with this Nondiscrimination Policy will be subject to appropriate disciplinary action.  Any action taken by an agent or employee that results in the unequal service to, treatment of, or behavior toward applicants or tenants on the basis of race or color may constitute a violation of state and federal fair housing laws.  Any tenant who believes that any of the above policies have been violated by any agent or employee of the RHA may contact the U.S. Department of Housing and Urban Development at 1-888-799-2085, or the U.S. Department of Justice at 1-800-896-7743 or 202-514-4713.

**Appendix C**

## EMPLOYEE ACKNOWLEDGMENT OF RECEIPT AND DISCUSSION OF CONSENT DECREE AND RHA NONDISCRIMINATION POLICY

      I acknowledge that on _____, 2015, I was provided a copy of the Consent Order entered by the Court in *United States v. Housing Authority of the City of Ruston,* Civil Action No. 3:13-cv-02778  (W.D. La.), and the RHA Nondiscrimination Policy.  I have read and understand these documents and have had my questions about these documents answered.  I understand my legal responsibilities under those two documents and shall comply with those responsibilities.   I further understand that I may be subject to discipline by the RHA if I fail to so comply.

_____
Signature

_____
Print Name

_____
Date

**Appendix D**

## EMPLOYEE ACKNOWLEDGMENT OF RECEIPT AND DISCUSSION OF RHA NONDISCRIMINATORY PROCEDURES FOR APPLICATIONS, ASSIGNMENTS, AND TRANSFERS

     I acknowledge that on _____, 2015, I was provided a copy of the Ruston Housing Authority Nondiscriminatory Procedures for Applications, Assignments, and Transfers.  I have read and understand this document and have had my questions about this document answered.  I understand my legal responsibilities and shall comply with those responsibilities.

_____
Signature

_____
Print Name

_____
Date

**Appendix E**

## **CERTIFICATION OF FAIR HOUSING ACT TRAINING**

I acknowledge that on _____, 2015, I was provided a copy of the Ruston Housing Authority Nondiscriminatory Procedures for Applications, Assignments, and Transfers.  I have read and understand this document and have had my questions about this document answered.  I understand my legal responsibilities and shall comply with those responsibilities.

_____
Signature

_____
Print Name

_____
Date

**Appendix F**

## NOTICE TO RESIDENTS OF THE RUSTON HOUSING AUTHORITY

On _____, 2015, the United States settled a lawsuit against the Ruston Housing Authority, *United States v. Ruston Housing Authority*, Case No. 3:13-cv-02778, in the United States District Court for the Western District of Louisiana. In that lawsuit, the United States claimed that the Ruston Housing Authority violated the federal Fair Housing Act because it discriminated on the basis of race or color against applicants and tenants at Ruston's housing complexes. Ruston Housing Authority contested the claims. Below is a summary of the main provisions of the Consent Order that settled the case.

1. **Injunction against Discrimination**. The Housing Authority cannot discriminate against a tenant or applicant on the basis of his or her race or color in any aspect of the rental of a unit.

2. **Nondiscrimination Policy**. The Housing Authority will publish and distribute to tenants a Nondiscrimination Policy regarding the rental of units.

3. **Nondiscrimination Procedures for Applications, Assignments, Transfers and Services**. The Housing Authority will develop, distribute to tenants, and follow new Nondiscrimination Procedures for responding to inquiries from persons interested in renting units, for processing applications, for assigning and transferring tenants to units, and for providing services to tenants.

4. **Training.** Employees of the Housing Authority will attend in-person training on the Fair Housing Act each year.

5. **Location of New Public Housing Units**. The Housing Authority will notify the United States if it intends to build new public housing units and will ensure that new units are located in areas that do not further racial segregation.

6. **Compliance Testing**. The United States may take steps to monitor the Housing Authority's compliance with the Consent Order, including fair housing tests.

7. **Identification of and Relief for Aggrieved Persons**. The Housing Authority will pay $175,000 for the purpose of compensating tenants or applicants who may have been harmed by the Housing Authority's alleged discriminatory practices. Tenants who have been discriminated against may also be entitled to transfer to another unit or complex.

8. **Record Keeping and Reporting**. The Housing Authority will provide the United States with reports for five years about its compliance with the Consent Order.

9. **Acquisition of Residential Rental Property**. The Housing Authority will notify the United States if it purchases or otherwise acquires an interest in other residential rental property.

10. **Length of Order.** The Consent Order will remain in effect for five (5) years.

11. **Remedies for Non-Compliance and Other Matters**.  The United States may ask the Court to impose a remedy if the Housing Authority does not comply with the Consent Order.  The parties may modify the terms of the Consent Order by mutual written agreement or by asking the Court.

If you would like to obtain a copy of the Consent Order, please contact the Ruston Housing Authority.  It will give you one free of charge.

**Appendix G**

# <u>RELEASE OF ALL CLAIMS</u>

In consideration of and contingent upon the payment of the sum of _____ dollars ($_____), pursuant to the Consent Order entered in *United States v. Ruston Housing Authority*, Case No. 3:13-cv-02778, in the United States District Court for the Western District of Louisiana ("the Action"), on _____, 2015, I hereby release and forever discharge the Ruston Housing Authority, including all of its officers, employees, agents, representatives, assignees, and successors in interest, from any and all liability for any claims, legal or equitable, under any source of law, that I may have against any of them arising in whole or in part out of the factual allegations made in this Action as of the date of the entry of the Consent Order. I fully acknowledge and agree that this Release shall be binding on my heirs, representatives, executors, successors, administrators, and assigns. I hereby acknowledge that I have read and understand this release and have executed it voluntarily and with full knowledge of its legal consequences.

_____
Signature

_____
Print Name

_____
Address

_____
Date

## Appendix H

| Aggrieved Persons | Amount of Monetary Damages |
|---|---|
| Krystle Woods | $25,426.00 |
| Kira Everett | $16,521.00 |
| Christian Rhoades | $12,621.00 |
| Dominiqua Kelly | $11,521.00 |
| Wanda Tatum | $9,750.00 |
| Shamir Wright | $9,621.00 |
| Katrice Grant | $9,621.00 |
| Nannette Nshom | $9,621.00 |
| Maranda Tyler | $9,621.00 |
| Shenica Frost | $9,621.00 |
| Alexis Turner | $9,621.00 |
| Denecia Blackman | $7,800.00 |
| Zandra Livingston | $7,025.00 |
| Kenneth Berry | $6,160.00 |
| Willie Williams | $5,500.00 |
| Oprah Diarse | $5,300.00 |
| Betty Leary | $3,650.00 |
| Virginia Wright | $3,000.00 |
| Alexandria Payne | $3,000.00 |